# United States Court of Appeals
# for the Fifth Circuit

JOHN HARVEY SCHNEIDER, *INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED.*

*Plaintiffs-Respondents,*

v.

NATERA, INC., MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, COWEN AND COMPANY, LLC, SVB LEERINK LLC, ROBERT W. BAIRD & CO., BTIG, LLC, AND CRAIG-HALLUM CAPITAL GROUP LLC,

*Defendants-Petitioners.*

On Petition for Permission to Appeal from the United States District Court for the Western District of Texas (Case No. 1:22-cv-00398-DAE)

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Danny S. Ashby
**O'MELVENY & MYERS LLP**
2501 N. Harwood Street
Dallas, Texas 75201
(972) 360-1900

Jonathan Rosenberg
Anton Metlitsky
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas
New York, NY 10019
(212) 326-2000

*Counsel for Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group LLC*

[Additional counsel listed on following page]

Eric R. Hail
Ted A. Huffman
**KATTEN MUCHIN
ROSENMAN LLP**
2121 N. Pearl Street, Suite 1100
Dallas, Texas 75201
(972) 360-1900

Bruce G. Vanyo
Christina L. Costley
**KATTEN MUCHIN
ROSENMAN LLP**
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
(310) 788-4400

*Counsel for Natera, Inc.*

# Certificate of Interested Persons

Case No. 25-_____

*Schneider v. Natera, Inc.*, No. 1:22-cv-00398-DAE (W.D. Tex.)

The undersigned counsel of record for Defendants-Petitioners certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Defendant-Petition:** Defendant-Petitioner is Natera, Inc.

2. **Defendant-Petitioner**: Defendant-Petitioner is Morgan Stanley & Co. LLC. Other interested entities are Morgan Stanley Domestic Holdings, Inc.; Morgan Stanley Capital Management, LLC; Morgan Stanley; and Mitsubishi UFJ Financial Group, Inc.

3. **Defendant-Petitioner**: Defendant-Petitioner is Goldman Sachs & Co. LLC. The other interested entity is The Goldman Sachs Group, Inc.

4. **Defendant-Petitioner**: Defendant-Petitioner is Cowen and Company, LLC. Other interested entities are Cowen Inc.; Toronto Dominion Holdings (U.S.A.), Inc.; TD Group US Holdings LLC; and The Toronto-Dominion Bank.

5. **Defendant-Petitioner**:  Defendant-Petitioner is SVB Leerink LLC.  Other interested entities are SVB Securities Holdings LLC and SVB Financial Group.

6. **Defendant-Petitioner**:  Defendant-Petitioner is Robert W. Baird & Co.  Other interested entities are Baird Financial Corporation and Baird Financial Group, Inc.

7. **Defendant-Petitioner**:  Defendant-Petitioner is BTIG, LLC.  The other interested entity is Condor Trading L.P.

8. **Defendant-Petitioner**:  Defendant-Petitioner is Craig-Hallum Capital Group LLC.  The other interested entity is Craig-Hallum Holdings LLC.

9. **Counsel for Defendant-Petitioner Natera, Inc.**:  Katten Muchin Rosenman LLP (Eric R. Hail, Ted A. Huffman, Bruce G. Vanyo, and Christina L. Costley).

10. **Counsel for the Defendants-Petitioners Underwriters**:  O'Melveny & Myers LLP (Danny S. Ashby, Jonathan Rosenberg, and Anton Metlitsky).

11. **Plaintiffs-Respondents**:  Plaintiffs-Respondents are British Airways Pension Trustees Limited ("BAPTL") and Key West Police & Fire Pension Fund ("Key West"), who allege a Section 12(a)(2) claim under the Securities Act of 1933 ("Securities Act") on behalf of a putative class of investors certified by the District Court as "[a]ll persons and entities who purchased or

otherwise acquired Natera common stock between February 27, 2020, and March 8, 2022, inclusive, and were damaged thereby," with certain exclusions of defendants and related persons and entities. Order at 9, ECF No. 178.

12. **Counsel for Plaintiffs-Respondents**: Counsel for Plaintiff-Respondent BAPTL is Kessler Topaz Meltzer & Check, LLP (Joshua E. D'Ancona, Gregory M. Castaldo, Joshua A. Materese, and Evan R. Hoey) and counsel for Plaintiff-Respondent Key West is Bernstein Litowitz Berger & Grossmann LLP (Jesse Jensen). Liaison class counsel for Plaintiff-Respondent BAPTL is Nix Patterson, LLP (Jeffrey John Angelovich, Cody Hill, Jessica Underwood).

13. **Other Parties in Interest**:

    a. Natera Individual Defendants:

        i. Steve Chapman

        ii. Michael Brophy

        iii. Matthew Rabinowitz

        iv. Ramesh Hariharan

        v. Roy Baynes

        vi. Monica Bertagnolli

        vii. Jonathan Sheena

viii.   Row Chapman

ix.   Herm Rosenman

x.   Gail Marcus

xi.   James I. Healy

xii.   Todd Cazzens

xiii.   Roelof F. Botha

xiv.   Paul R. Billings

b.  Counsel for the Natera Individual Defendants:  Katten Muchin

Rosenman LLP (Eric R. Hail, Ted A. Huffman, Bruce G. Vanyo, and

Christina L. Costley)

Dated:  April 4, 2025

KATTEN MUCHIN
ROSENMAN LLP

Eric R. Hail
Ted A. Huffman
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
T: (214) 765-3600
F: (214) 765-3602

Bruce G. Vanyo
Christina L. Costley
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
T: (310) 788-4400
F: (310) 788-4471

*Counsel for Defendant-Petitioner
Natera, Inc.*

O'MELVENY & MYERS LLP

By: /s/ *Danny S. Ashby*
   Danny S. Ashby
   dashby@omm.com
   2501 N. Harwood Street
   Suite 1700
   Dallas, Texas 75201
   T: (972) 360-1900
   F: (972) 360-1901

   Jonathan Rosenberg
   Anton Metlitsky
   jrosenberg@omm.com
   ametlitsky@omm.com
   1301 Avenue of the Americas
   Suite 1700
   New York, New York 10019
   T: (212) 326-2000
   F: (212) 326-2061

   *Counsel for Defendants-Petitioners
   Morgan Stanley & Co. LLC,
   Goldman Sachs & Co. LLC, Cowen
   and Company, LLC, SVB Leerink
   LLC, Robert W. Baird & Co., BTIG,
   LLC, and Craig-Hallum Capital
   Group LLC*

# Table of Contents

I.     Preliminary Statement ................................................................1

II.    Jurisdictional Statement................................................................5

III.   Questions Presented....................................................................6

IV.   Relief Sought ............................................................................6

V.     Statement of the Case ................................................................6

VI.   Argument ................................................................................10

     1.      Standard for Granting Rule 23(f) Review .........................................10

     2.      The District Court Improperly Certified a Securities Act Section 12(a)(2) Class Claim Against Defendants Because Plaintiff Key West Failed to Proffer Evidence of its Purchase from any Underwriter in the SPO. ....................................................11

     3.      At a Minimum, the District Court Improperly Certified a Section 12(a)(2) Class Against Underwriters as to Whom No Purchase is Even Alleged. ................................................18

     4.      The Court Should Stay Discovery as to the Underwriters Pending this Appeal . ........................................................20

VII.   Conclusion ................................................................................21

# Table of Authorities

## Cases

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ....................................................12

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
  504 F. Supp. 2d 151 (N.D. Tex. 2007) .................................15

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ............................................................11

*Davis v. Thornburgh*,
  903 F.2d 212 (3d Cir. 1990) ...............................................13

*Earl v. Boeing Co.*,
  21 F.4th 895 (5th Cir. 2021) ......................................... 20, 21

*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) ..............................................13

*Freidus v. Barclays Bank PLC*,
  734 F.3d 132 (2d Cir. 2013) .................................................7

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ..............................................................2

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ..................................................... 5, 11, 16

*In re AMF Bowling Sec. Litig.*,
  2002 WL 461513 (S.D.N.Y. Mar. 26, 2002) ......................14

*In re Constar Int'l Inc. Sec. Litig.*,
  585 F.3d 774 (3d Cir. 2009) ...............................................12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  310 F. Supp. 2d 819 (S.D. Tex. 2004) ................................14

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) .................................................7

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  245 F. Supp. 3d 870 (S.D. Tex. 2017) ........................ 7, 14, 15

*In re Puda Coal Sec. Inc., Litig.*,
  2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) .......................16

*In re Quarterdeck Off. Sys. Inc. Sec. Litig.*,
  1993 WL 623310 (C.D. Cal. Sept. 20, 1993) ......................................................13

*In re Wachovia Equity Secs. Litig.*,
  753 F.Supp.2d 326 (S.D.N.Y. 2011) .................................................................19

*In re WorldCom, Inc. Secs. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003) ...............................................................19

*Jedrzeczyk v. Skillz Inc.*,
  2022 WL 2441563 (N.D. Cal. July 5, 2022) ......................................................16

*Katz v. Gerardi*,
  655 F.3d 1212 (10th Cir. 2011) ...........................................................................7

*Kirkwood v. Taylor*,
  590 F. Supp. 1375 (D. Minn. 1984), *aff'd*, 760 F.2d 272 (8th Cir. 1985)............13

*Krim v. pcOrder.com, Inc.*,
  210 F.R.D. 581 (W.D. Tex. 2002).......................................................................14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ............................................................................13

*Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third
  Bancorp.*,
  731 F. Supp. 2d 689 (S.D. Ohio 2010)................................................................19

*Marcus v. BMW of North America, LLC*,
  687 F.3d 583 (3d Cir. 2012) ........................................................................ 11, 17

*Peak v. Zion Oil & Gas, Inc.*,
  2020 WL 1047894 (N.D. Tex. Mar. 3, 2020) ......................................................7

*Pinter v. Dahl*,
  486 U.S. 622 (1988) .......................................................................................2, 7

*Pirani v. Slack Techs., Inc.*,
  127 F.4th 1183 (9th Cir. 2025)..........................................................................2, 4

*Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  632 F.3d .............................................................................................................18

*Regents of Univ. of California v. Credit Suisse First Bos. (USA), Inc.*,
  482 F.3d 372 (5th Cir. 2007) ....................................................................... 10, 17

*Rivera v. Wyeth-Ayerst Lab'ys*,
  283 F.3d 315, (5th Cir. 2002) .........................................................................3, 12

*Slack Techs., LLC v. Pirani*,
   598 U.S. 759 (2023) ........................................................................................2

*Smith v. Suprema Specialties, Inc.*,
   2007 WL 1217980 (D.N.J. Apr. 23, 2007) ........................................................15

*Smith v. Suprema Specialties, Inc.*,
   Case No. 02-cv-168 (D.N.J. Sept. 15, 2006)......................................................16

*Tsirekidze v. Sollitto, et al.*,
   Case No. 07-cv-2204 (D. Ariz. Mar. 27, 2009) .................................................15

*Tsirekidze v. Syntax-Brillian Corp.*,
   2009 WL 2151838 (D. Ariz. July 17, 2009) ......................................................15

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) .............................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 350 (2011) ......................................................................... 3, 5, 11

**Statutes**

15 U.S.C. § 77*l*(a)(2)2, .............................................................................. 2, 7, 15

**Rules**

Fed. R. Civ. P. 23(f)......................................................................... 1, 5, 10, 17, 20, 21

Pursuant to Federal Rule of Civil Procedure 23(f) and Federal Rule Of Appellate Procedure 5, Defendants-Petitioners Natera, Inc. ("Natera") and Morgan Stanley & Co. LLC ("Morgan Stanley"), Goldman Sachs & Co., LLC, Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG, LLC, and Craig-Hallum Capital Group, LLC (collectively, the "Underwriters," each an "Underwriter," and together with Natera, "Defendants-Petitioners" or "Defendants"), respectfully petition for leave to appeal the District Court's March 21, 2025 Order: (1) adopting the Magistrate Judge's January 28, 2025 Report and Recommendation; and (2) granting Plaintiffs' Motion to Certify Class in *Schneider v. Natera, Inc.*, No. 1:22-cv-00398-DAE (W.D. Tex.) ("Order"). This petition is brought within 14 days of the Order, as Rule 23(f) requires.

## I.    Preliminary Statement

This appeal presents a recurring question involving the intersection between two critical requirements governing securities class actions for secondary securities offerings: the standing requirement for investor claims brought under Section 12(a)(2) of the Securities Act of 1933, and the proof requirements under Rule 23 of the Federal Rules of Civil Procedure for a lead plaintiff seeking certification of a Section 12(a)(2) class. This Court's review under Rule 23(f) is necessary because the District Court certified a Section 12(a)(2) class in a secondary offering without requiring proof that the proposed lead plaintiffs had standing to pursue that claim.

That decision not only undermines the careful balance Congress struck in restricting the class of plaintiffs who can bring near strict-liability claims under Section 12(a)(2), but eviscerates the Supreme Court's repeated admonition that a plaintiff seeking to lead a class must prove (rather than merely allege) at the class certification stage that all Rule 23 requirements have been satisfied.

In passing Section 12(a)(2) of the Securities Act, Congress limited the individuals who could bring suit by setting out statutory standing requirements, including that a plaintiff can only recover from a "seller" of a security in the challenged offering. 15 U.S.C. § 77*l*(a)(2); *see Pinter v. Dahl*, 486 U.S. 622, 650 (1988) ("There is no support in the statutory language or legislative history for expansion of § [12(a)(2)] primary liability beyond persons who pass title and persons who 'offer' [or] 'solicit' offers."); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995) ("Following the most natural and symmetrical reading [with Section 11] . . . the liability imposed by § 12(2) cannot attach unless there is an obligation to distribute the prospectus in the first place."); *see also Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1192 (9th Cir. 2025) ("Under *Gustafson*, a security can be sold 'by means of a prospectus' only if it is a registered security sold in a public offering, and liability under section 12(a)(2) can be based only on the sale of such a security."). These strict requirements are part of the balance Congress struck in the Securities Act between a near strict liability regime and a narrow class of

eligible plaintiffs. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 769–70 (2023) (noting given "the 1933 Act is limited in scope" compared to the 1934 Act, "it seems equally possible that Congress sought a balanced liability regime that allows a narrow class of claims to proceed on lesser proof but requires a higher standard of proof to sustain a broader set of claims").

The Supreme Court has also emphasized that a lead plaintiff seeking class certification must *prove*—not just plead—that the proposed class satisfies all Rule 23 requirements. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). And this Court has long held that the proposed class representative cannot satisfy that burden without proving, at a minimum, its own standing to pursue the putative class claim. *E.g. Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002) ("[S]tanding is an inherent prerequisite to the class certification inquiry.").

Leave to appeal is warranted because the District Court certified a class on a Section 12(a)(2) claim even though neither named Plaintiff established that it has standing to maintain that claim, rendering them both atypical and inadequate class representatives under Rule 23. Both named Plaintiffs, BAPTL and Key West, failed to submit evidence of the requisite purchase from an Underwriter in Natera's

3

July 2021 Secondary Public Offering of 5 million shares (the "SPO"). It was undisputed below that court-appointed lead Plaintiff BAPTL did not purchase any shares from an Underwriter. And additional named Plaintiff Key West's only "proof" of a purchase from an Underwriter is an unsupported *allegation* in the Amended Complaint that it purchased from Underwriter Morgan Stanley. Although Key West's PSLRA certification identifies the date, price, and number of shares it purchased or sold, the certification does not identify from whom Key West purchased the shares. And the District Court did not address the undisputed record evidence that more than 31 million Natera shares were in public circulation before the SPO. So without *proof* that Key West purchased *in the SPO*—let alone from a statutory seller like one of the Underwriters—Key West cannot distinguish the shares it purchased on the SPO date from the undifferentiated mass of Natera securities already in the market. *See Pirani*, 127 F.4th at 1191 (holding that Section 12(a)(2) only covers direct sales of securities by statutory seller pursuant to "an allegedly false or misleading prospectus" and rejecting argument that because secondary offering amounted to one third of issuer's shares, "high probability" existed that plaintiff purchased "at least some" secondary offering shares).

This Court's intervention is needed even though the District Court indicated that Defendants-Petitioners could re-raise the Section 12(a)(2) standing issue after full discovery. Allowing a Section 12(a)(2) class to move forward without putting

Plaintiffs to their burden of proving standing would not only contravene the

Supreme Court's consistent mandate that a party seeking class certification must

affirmatively prove compliance with all Rule 23 elements, *Dukes*, 564 U.S. at 350;

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014), it would

require the Underwriters to engage in costly discovery that is potentially

unnecessary (given that they are only sued under Section 12(a)(2)) and would put

undue settlement pressure on Defendants.  Defendants-Petitioners respectfully

request that this Court (i) grant permission under Federal Rule of Civil Procedure

23(f) to pursue an interlocutory appeal of the District Court's Order on class

certification; (ii) stay proceedings in the District Court against the Underwriters

and on the Section 12(a)(2) claim pending this appeal to avoid costly and

potentially unnecessary discovery; and (iii) reverse the District Court's order on

class certification as it pertains to the Section 12(a)(2) claim.  At a minimum, this

Court should reverse the class certification decision to the extent it applies to

Underwriters other than Morgan Stanley, given the absence of even an allegation

that any named plaintiff purchased SPO shares from any of them.

## II.   Jurisdictional Statement

Jurisdiction for this timely appeal lies under Rule 23(f) and Federal Rule of

Appellate Procedure 5.

### III.  Questions Presented

1.      Whether the Court should grant review of the District Court's certification of a class involving a Section 12(a)(2) claim—the only claim against the Underwriters—where neither lead plaintiff met its burden of proving standing to maintain such a claim against any Defendant?

2.      Whether the District Court improperly certified Plaintiffs' Section 12(a)(2) claim against Defendants for which there is not even an allegation—much less proof—of a purchase from any of those Underwriters?

### IV.  Relief Sought

Defendants respectfully request that the Court:

1.      Grant review of the District Court's Order on Class Certification related to the Section 12(a)(2) claim against Defendants;

2.      Stay proceedings in the District Court on the Section 12(a)(2) claim against the Underwriters; and

3.      Reverse the District Court's finding that Key West made a sufficient showing of its Section 12(a)(2) standing to obtain class certification of a Section 12(a)(2) claim against Defendants.

### V.  Statement of the Case

Plaintiffs-Respondents assert a claim against Defendants under Section 12(a)(2) of the Securities Act, which is the only claim they assert against the

Underwriters.  Am. Compl. ¶¶ 293–304, ECF No. 60.  The statute provides that

"any person **who offers or sells a security by means of a prospectus** or oral

communication, which includes an untrue statement of a material fact, or omits to

state a material fact necessary in order to make the statements not misleading shall

be liable to the person purchasing **such security**."  15 U.S.C. § 77*l*(a)(2) (cleaned

up) (emphasis added).  Because of Congress's use of the bolded language, it is

well-established that a plaintiff pursuing a Section 12(a)(2) claim must prove that it

purchased its shares directly in the offering from a statutory seller.[1]  For purposes

of the claim here, that means that Plaintiffs must establish that they purchased SPO

shares from an SPO Underwriter.  Absent such a showing, Plaintiffs lack standing

to pursue a Section 12(a)(2) claim.[2]  And without standing, Plaintiffs are

_____

[1]*Pinter*, 486 U.S. at 650; *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (noting that "list of potential defendants in a section 12(a)(2) case is governed by a judicial interpretation of section 12 known as the "'statutory seller' requirement"); *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013) ("to have standing under § 12(a)(2), however, plaintiffs must have purchased securities directly from the defendants"); *Katz v. Gerardi*, 655 F.3d 1212, 1220 (10th Cir. 2011) (if plaintiff "cannot demonstrate that he was a purchaser of securities, he lacks standing to bring his claims under the 1933 Act").
[2] *E.g.*, *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 888 (S.D. Tex. 2017) ("court lacks power to decide a claim that a plaintiff lacks standing to bring[,]" therefore "plaintiff must demonstrate standing for each claim he seeks to press" (citation omitted)), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019); *Peak v. Zion Oil & Gas, Inc.*, 2020 WL 1047894, at *1 (N.D. Tex. Mar. 3, 2020) (dismissing "Securities Act claims for lack of standing").

inadequate and atypical representatives of the shareholder class on whose behalf they seek to pursue that claim. *See infra* at 13–14.

On June 4, 2024, Plaintiffs filed a motion in the District Court to certify a class as to their Section 12(a)(2) claim, as well as their Securities Act Sections 11 and 15 claims and Exchange Act of 1934 Sections 10(b), 20(a), and 20A claims. *See* ECF No. 136. Plaintiffs also requested that the court appoint Plaintiffs as class representatives. *Id.*

Defendants opposed class certification, ECF No. 154; Plaintiffs filed a reply in support of their motion, ECF No. 161; and all Defendants filed a sur-reply in opposition, ECF No. 162. In their briefing, Plaintiffs conceded that BAPTL does not have Section 12(a)(2) standing, relying instead on Key West's alleged standing based on its PSLRA certification submitted with its failed motion to be appointed lead plaintiff. That certification identifies the date and price at which Key West purchased Natera shares, but not the seller of those shares. *See* ECF No. 9-2.

On January 28, 2025, the Magistrate Judge issued a Report & Recommendation ("R&R"), recommending that the District Court certify a class on all Plaintiffs' claims, including their Section 12(a)(2) claim. R&R at 24–26, ECF 170. The Magistrate Judge deemed Plaintiffs' "showing [] sufficient to demonstrate standing under both Section 11 and 12(a)(2)." *Id.* at 24. This was based on Plaintiffs having "pleaded and put forward evidence that Key West

purchased Natera shares on the day of the July 21 SPO," citing the Amended Complaint (which merely *alleges* a purchase from Underwriter Morgan Stanley) and Key West's PSLRA certification (which does not mention Morgan Stanley or any other Underwriter). *Id.*

The Underwriters objected to the R&R ("Objections"), ECF No. 172; Natera joined those Objections, ECF No. 173; Plaintiffs responded to the Objections, ECF No. 174; and the Underwriters replied in support of the Objections ("Reply"), ECF No. 176. Key West again relied on its PSLRA certification and the *allegation* in the Amended Complaint as "proof" of its purchase from Morgan Stanley, failing to proffer any actual *evidence* of a purchase from Morgan Stanley or any other SPO Underwriter.

On March 21, 2025, the District Court adopted the R&R, overruling the Objections. *See* ECF No. 178. The District Court ruled that Plaintiffs "have adequately pleaded and provided sufficient evidence—at this stage of the litigation"—of Key West's standing. Order at 7. The District Court noted, however, that "[a]fter sufficient time for discovery, [] Defendants may re-raise this issue at a later stage of the case." *Id.* at 7 n.3. The District Court also ruled that Plaintiffs need not show a purchase from "each Underwriter in an offering," citing Southern District of New York cases (and one Southern District of Ohio case in contravention). *Id.* at 7–8.

## VI.  Argument

### 1.  Standard for Granting Rule 23(f) Review

Rule 23(f) allows a court of appeals to "permit an appeal from an order granting or denying class-action certification."  "[I]t is appropriate to grant leave to appeal an adverse determination where (1) a 'certification decision turns on a novel or unsettled question of law' or (2) '[a]n order granting certification . . . may force a defendant to settle rather than incur the costs of defending a class action. . . ."  *Regents of Univ. of California v. Credit Suisse First Bos.(USA), Inc.*, 482 F.3d 372, 379 (5th Cir. 2007) (quoting Rule 23(f) advisory committee note); *see also* Fed. R. Civ. P. 23(f) Advisory Committee Note ("Permission is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation.").

The class certification decision here turns on an unsettled question of law regarding the intersection of Rule 23 and the standing requirements for a Section 12(a)(2) claim.  That issue has important implications for Section 12(a)(2) classes, particularly in cases like this involving secondary securities offerings.  Certifying Section 12(a)(2) classes in such cases without proof of standing—i.e., a purchase from a statutory seller of shares of the issuer that were sold in the secondary offering, as opposed to shares from the vast existing pool of the issuer's

securities—would not only undermine the balance Congress struck in restricting the class of plaintiffs who can bring Section 12(a)(2) claims, but also place undue settlement pressure on Defendants. As the Supreme Court has noted, "[c]ertification of a large class may so increase the . . . potential damages liability and litigation costs" that they "may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978). And because "the certification decision is typically a game-changer, often the whole ballgame, . . . attentiveness to 'the potential for unwarranted settlement pressure' coincides with a court's obligation to conduct a 'rigorous analysis' of whether a plaintiff has demonstrated actual conformance with Rule 23." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 n.2 (3d Cir. 2012).

2. **The District Court Improperly Certified a Securities Act Section 12(a)(2) Claim Class Because Plaintiff Key West Failed to Submit Evidence of its Purchase from any Underwriter in the SPO.**

A lead plaintiff seeking to certify a class under Rule 23 must "affirmatively demonstrate" that their proposed class "in fact" satisfies all Rule 23 requirements. *Dukes*, 564 U.S. at 350. Bare allegations are not enough because "Rule 23 does not set forth a mere pleading standard." *Id.*; *see also Halliburton*, 573 U.S. at 275 ("[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23.");

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) ("[I]t is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met," and "district courts must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321, 325 (5th Cir. 2005) (stating that "plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification," and holding that "[c]ourts cannot make an informed decision based on bare allegations [and] one-sided affidavits"). "Class certification is an especially serious decision, as it is often the defining moment in class actions" that "may sound the 'death knell' of the litigation on the part of plaintiffs or create unwarranted pressure to settle non-meritorious clams on the part of defendants." *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

Intrinsic to satisfying Rule 23's requirements is the lead plaintiff establishing its own standing to pursue the putative class's claim. As this Court has made clear, "standing is an inherent prerequisite to the class certification inquiry." *Rivera*, 283 F.3d at 319 (cleaned up); *see also Flecha v. Medicredit, Inc.*,

946 F.3d 762, 769 (5th Cir. 2020) (stating in FCPA case that "if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise"); *Davis v. Thornburgh*, 903 F.2d 212, 222 (3d Cir. 1990) (affirming denial of class certification where plaintiff "did not have individual standing" and thus could not "be regarded as a member of the class she sought to represent"); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003) (vacating class certification and remanding with instructions to dismiss because named plaintiffs lacked standing). A named plaintiff without standing to pursue the class claim is (i) atypical of the class and (ii) an inadequate representative of the class's interests, thus precluding certification under Rule 23. *See, e.g., Kirkwood v. Taylor*, 590 F. Supp. 1375, 1381–83, 1386 (D. Minn. 1984) (noting plaintiff that cannot establish standing is inadequate class representative because "their interests no longer coincide as regards th[e] claim, and they have no incentive to prosecute vigorously a claim that they cannot pursue individually," and decertifying Section 11 class where plaintiffs "might have purchased [the] offering stock" but could not trace their shares), *aff'd*, 760 F.2d 272 (8th Cir. 1985) (Table); *In re Quarterdeck Off. Sys. Inc. Sec. Litig.*, 1993 WL 623310, at *2–3 (C.D. Cal. Sept. 20, 1993) (finding plaintiffs inadequate and atypical because challenges to standing subjected them to "unique defense" that "would absorb a considerable amount of plaintiffs' time and divert attention

13

from the other claims"); *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 584–86, 591

(W.D. Tex. 2002) (denying class certification because named plaintiffs lacked

standing).

These same principles apply to a proposed Section 12(a)(2) class where the

class representatives are unable to establish Section 12(a)(2) standing. *See In re*

*AMF Bowling Sec. Litig.*, 2002 WL 461513, at *6 (S.D.N.Y. Mar. 26, 2002)

(denying class certification where plaintiff purchased shares from broker, not

underwriter, holding that plaintiff "does not have standing to file a Section 12

claim against defendants," rendering his claims "not 'typical of the claims . . . of

the class'" (quoting Rule 23(a)(3))); *In re Plains*, 245 F. Supp. 3d at 932 (when

plaintiff "does not have individual standing to assert a [Securities Act] claim [it]

may not do so even if [it] meets the other Rule 23(a) requirements"); *Levitin v. A*

*Pea In The Pod, Inc.*, 1997 WL 160184, at *5 (N.D. Tex. Mar. 31, 1997) (holding

Section 12(a)(2) claims of plaintiff lacking Section 12(a)(2) standing not "typical"

under Rule 23); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 310 F. Supp.

2d 819, 859 (S.D. Tex. 2004) (for Section 12(a)(2) claims, "class representative(s)

must be actual purchasers from their immediate sellers"). Thus, any plaintiff

seeking to lead a class of plaintiffs pursuing Section 12(a)(2) claims must not

merely allege, but submit proof, at the class certification stage that it has standing

to assert that claim. Because of the statute's phrasing—limiting the potential

defendants to those who "offer[] or sell[] a security . . . by means of a prospectus," and eligible plaintiffs to those "purchasing such security"—a plaintiff pursuing a Section 12(a)(2) claim must prove that it purchased its shares directly in the challenged offering from a statutory seller. 15 U.S.C. § 77*l*(a)(2); *see supra* n.1; *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 159 (N.D. Tex. 2007) (Section 12(a)(2) standing "limited to shareholders who acquired securities directly in the initial offering"); *In re Plains*, 245 F. Supp. 3d at 928 (Section 12(a)(2) allows "the person purchasing a security from a statutory seller to sue for misrepresentations connected with the sale").

The District Court erred by certifying a Section 12(a)(2) class of plaintiffs without requiring any lead plaintiff to submit proof of standing. The only evidence Key West submitted is its "certification" that it purchased 389 Natera shares on the SPO date at the $113 offering price. Order at 7. That certification is insufficient as a matter of law, because it does not attest to a purchase from *any* statutory seller.[3] As Defendants showed in the District Court, given the volume of other

---

[3] Decisions Plaintiffs cited below illustrate the sort of evidence necessary to prove standing. In *Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *2 (D. Ariz. July 17, 2009), for example, the court found sufficient an investment transaction detail document showing a stock purchase from an underwriter at the offering price on the offering date, *see Tsirekidze v. Sollitto, et al.*, Case No. 07-cv-2204, ECF No. 263-2 (D. Ariz. Mar. 27, 2009). And in *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at *6 (D.N.J. Apr. 23, 2007), the court found sufficient plaintiff's declaration listing "transactions in [issuer] securities,"

Natera shares in the market from Natera's prior offerings (31,915,724 shares or 86% of Natera's float post-SPO), "even alleging that someone bought shares on the day of the . . . [o]ffering at the offering price is inadequate to establish statutory standing [under either Section 11 or Section 12(a)(2)] . . . , due to the significant possibility that shares purchased originated from the prior offering but were being traded at the secondary offering price." Reply at 3 (quoting *Jedrzeczyk v. Skillz Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022)); *see also In re Puda Coal Sec. Inc., Litig.*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013) ("It is simply not enough to note that [plaintiff] bought shares on the day of an offering in a marketplace actively trading issued shares, and rely on the similarity of date and share price to demonstrate that the shares were issued pursuant to, or were traceable to" SPO). Key West has obviously been aware of this problem from the outset, alleging in the Amended Complaint that it purchased Natera shares from Morgan Stanley, a statutory seller. But when it came time to "actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," *Halliburton*, 573 U.S. at 275, Key West made no attempt to prove that it purchased those shares from Morgan Stanley—or any other Underwriter—in the SPO.[4]

_____

including a purchase from an underwriter in the offering, *see Smith v. Suprema Specialties, Inc.*, Case No. 02-cv-168, ECF No. 219 (D.N.J. Sept. 15, 2006).
[4] Even if Key West had submitted evidence, as opposed to just making an allegation, that its purchase was from Morgan Stanley, that would still not prove that the purchase was part of the SPO. Morgan Stanley is not only an investment

This failure cannot be overlooked at class certification, and left to revisit at a later stage in the litigation. Doing so would contravene the Supreme Court's and this Court's repeated insistence on the need for proof and "rigorous analysis" at the class certification stage (*see supra* at 11–12), and place the District Court's Rule 23 imprimatur on a class with no lead plaintiff who proved its Section 12(a)(2) standing and, thus, its adequacy to lead the class and the typicality of its claims (*see supra* at 13–15). Indeed, "attentiveness to 'the potential for unwarranted settlement pressure' coincides with a court's obligation to conduct a 'rigorous analysis' of whether a plaintiff has demonstrated actual conformance with Rule 23." *Marcus*, 687 F.3d at 591 n.2. And this is one of the very reasons that Rule 23(f) was implemented: a decision in the Underwriters' favor would be dispositive of the litigation against them, whereas an "order granting certification" may force settlement or an entire set of Defendants into incurring the unnecessary costs of discovery and otherwise defending a class action in which they should not be parties. *See Credit Suisse*, 482 F.3d at 379; Fed. R. Civ. P. 23(f) Advisory Committee Note.

---

bank, but also a full service broker-dealer. And as with any broker-dealer, it routinely sells secondary-market shares of publicly-listed companies, including Natera. Key West still would have needed to prove that its purchase from Morgan Stanley was of shares that were part of the SPO, rather than Natera shares that were trading on the secondary market.

The Court should, therefore, hear this appeal, hold that Key West has failed to meet its burden of establishing standing to pursue a Section 12(a)(2) claim, making it an inadequate and atypical class representative, and reverse the District Court's Order certifying a Section 12(a)(2) class.

3. **At a Minimum, the District Court Improperly Certified a Section 12(a)(2) Class Against Underwriters as to Whom No Purchase is Even Alleged.**

The District Court acknowledged—and it is undisputed—that Key West has not even alleged that it purchased SPO shares from any of the other six Underwriters. *See* Order at 7–8. Citing Southern District of New York decisions at the motion-to-dismiss stage, the District Court found that merely alleging a purchase from *one* Underwriter suffices to establish adequacy to pursue class claims against all *seven* Underwriters. *Id.* But class certification requires more. As explained (*see supra* at 2, 7), Congress authorized suit under Section 12(a)(2) only against a *statutory seller*. Plaintiffs cannot lump all potential statutory sellers together despite having no proof—or even an allegation—of a purchase from them at class certification.

Other courts have reached that exact conclusion: a purchase must be proved against *each* statutory seller from whom a plaintiff wishes to recover. *See, e.g.*, *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) (affirming dismissal of claims against defendants

18

"from which the named plaintiffs never purchased securities"); *Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 712–13 (S.D. Ohio 2010) (finding affidavit stating plaintiff purchased shares from a single underwriter insufficient to sustain claims "against all of the [other] Underwriter Defendants" and dismissing claim against other underwriter defendants); 1 McLaughlin on Class Actions § 4:28 (21st ed.) (stating "[i]n securities suits alleging claims based on multiple offerings, . . . most courts hold that the named plaintiffs must themselves possess claims against each defendant, so that plaintiffs have standing to sue only regarding securities offerings in which they purchased securities" and collecting cases).[5]  Illustrating this point, the court in *Levitin* certified a Section 12(a)(2) class only against "the underwriter who passed title of the stock to" one of the proposed class representatives, 1997 WL 160184, at *5, but denied class certification as to the other alleged statutory sellers, *id.* at *5–7.

At a minimum, that same result should apply here.  Plaintiffs must be put to their burden as to *each* alleged statutory seller.  *See* 1997 WL 160184 at *5 & n.6 (holding where plaintiff "has not presented any evidence that he purchased the

---

[5] The cases upon which the District Court relied which allowed suit to continue against underwriters against whom no purchase was alleged were decided at the motion to dismiss, rather than class certification, stage.  *See* Order at 7 (citing *In re WorldCom, Inc. Secs. Litig.*, 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003), and *In re Wachovia Equity Secs. Litig.*, 753 F. Supp. 2d 326, 374 (S.D.N.Y. 2011)).

securities directly from any defendant other than Stephens Inc.," plaintiff's claim is typical only "of all plaintiffs who purchased from Stephens Inc."). Because Plaintiffs have not even attempted to meet that burden (or even make allegations) as to the remaining Underwriters, a Section 12(a)(2) class claim should not have been certified against them.

4. **The Court Should Stay Discovery as to the Underwriters Pending this Appeal.**

The Court should stay proceedings against the Underwriters on the Section 12(a)(2) claim—the only claim against them—while this petition is pending. *See* Fed. R. Civ. P. 23(f). The Court considers four factors: "(1) whether the movant makes a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured without a stay; (3) whether other interested parties will be irreparably injured by a stay; and (4) where the public interest lies." *Earl v. Boeing Co.*, 21 F.4th 895, 898 (5th Cir. 2021). All relevant factors weigh in favor of the limited stay the Underwriters seek.

Defendants have made a strong showing that the District Court improperly certified a Section 12(a)(2) class where neither Plaintiff proved it has standing to assert that claim. If that strong showing carries the day, Plaintiffs would have no basis for continuing to pursue the only class claim it has against the Underwriters. As to harm, discovery costs alone provide a basis for a stay. *See Boeing*, 21 F.4th at 899 (finding sufficient harm where classes included "thousands" of members,

noting that discovery would be "very costly and time consuming," and would be unnecessary if defendants were to "succeed on their standing challenge"). Nor can Plaintiffs establish that a stay would injure them or any other parties, as they can still pursue discovery on their other claims against the Natera Defendants. Finally, the "public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs." *Id.* at 900. For each of these reasons, the Court should order the limited stay the Underwriters request.

## VII. Conclusion

Defendants respectfully ask the Court for permission under Rule 23(f) to pursue interlocutory appeal of the District Court's Order on class certification and for a limited stay of proceedings against the Underwriters pending that appeal. Defendants further request that the Court reverse the District Court's Order certifying Plaintiffs' Securities Act Section 12(a)(2) claim and remand the case for further proceedings.

Dated: April 4, 2025

KATTEN MUCHIN
ROSENMAN LLP

Eric R. Hail
Ted A. Huffman
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
T: (214) 765-3600
F: (214) 765-3602

Bruce G. Vanyo
Christina L. Costley
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
T: (310) 788-4400
F: (310) 788-4471

*Counsel for Defendant-Petitioner
Natera, Inc.*

O'MELVENY & MYERS LLP

By: /s/ *Danny S. Ashby*
    Danny S. Ashby
    dashby@omm.com
    2501 N. Harwood Street
    Suite 1700
    Dallas, Texas 75201
    T: (972) 360-1900
    F: (972) 360-1901

    Jonathan Rosenberg
    Anton Metlitsky
    jrosenberg@omm.com
    ametlitsky@omm.com
    1301 Avenue of the Americas
    Suite 1700
    New York, New York 10019
    T: (212) 326-2000
    F: (212) 326-2061

    *Counsel for Defendants Morgan
    Stanley & Co. LLC, Goldman Sachs
    & Co. LLC, Cowen and Company,
    LLC, SVB Leerink LLC, Robert W.
    Baird & Co., BTIG, LLC, and
    Craig-Hallum Capital Group LLC*

## Certificate of Service

I, Danny S. Ashby, hereby certify that a copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I also certify that a true and correct copy was served upon the following counsel via electronic mail, who consented to such service in writing:

**NIX PATTERSON, LLP**
Cody Hill
Jeffrey J. Angelovich
Jessica Underwood
8701 Bee Cave Road
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 495-1534
codyhill@nixlaw.com
jangelovich@nixlaw.com
junderwood@nixlaw.com

*Liaison Counsel for Lead Plaintiff British Airways Pension Trustees Limited*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jesse Jensen
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jesse.jensen@blbglaw.com

*Counsel for Additional Named Plaintiff Key West Police & Fire Pension Fund*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Gregory M. Castaldo
Joshua E. D'Ancona
Joshua A. Materese
Evan R. Hoey
Vanessa M. Milan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
ehoey@ktmc.com
vmilan@ktmc.com

*Lead Counsel for Lead Plaintiff British Airways Pension Trustees Limited*

Dated: April 4, 2025

_/s/ Danny S. Ashby_____
Danny S. Ashby

**Certificate of Compliance**

I hereby certify that this document complies with Federal Rule of Appellate Procedure 5(c) and 32(g) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 5, this document contains 5,178 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: April 4, 2025

/s/ *Danny S. Ashby*
Danny S. Ashby

## Certificate of Conference

I hereby certify that on April 3, 2025, counsel for the Underwriter Defendants contacted counsel for Plaintiffs-Respondents and confirmed that they expect to file a response to Defendants' Petition for appellate review under Rule 23(f).

Dated: April 14, 2025

*/s/ Danny S. Ashby*
Danny S. Ashby

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, ET AL., | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | |
| v. | § | **No. 1:22-CV-00398-DAE** |
| | § | |
| NATERA, INC., ET AL., | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE DAVID A. EZRA
       SENIOR UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiffs John Harvey Schneider, Key West Police & Fire Pension Fund, University of Puerto Rico Retirement System, and British Airways Pension Trustees Limited's ("Plaintiffs") motion to certify class, Dkt. 136, and all related briefing. After reviewing these filings and the relevant case law, as well as holding a hearing, the undersigned recommends that the District Judge grant Plaintiffs' motion.

## I.    BACKGROUND

Plaintiffs initiated this putative class action based on a series of alleged securities violations by Defendant Natera, Inc. ("Natera") and various other defendants. First, Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act (the "Exchange Act") and SEC Rule 10b-5 against Defendants Natera, Steve Chapman, Michael Brophy, Matthew Rabinowitz, and Paul Billings. Dkt. 60,

1

at 69-71. The individuals subject to Exchange Act claims served as Natera executives throughout the class period. Dkt. 60, at 14-15. Plaintiffs also bring claims against Chapman, Brophy, Rabinowitz, and Billings for alleged violations of Section 20(a) of the Exchange Act. *Id.* at 71-72. Additionally, Plaintiffs sue Chapman, Brophy, and Rabinowitz for alleged violations of 20A of the Exchange Act. *Id.* at 72-75. Finally, Plaintiffs allege that Natera, Chapman, Brophy, Rabinowitz, nine Natera directors, and various other institutional defendants violated Sections 11, 12(a)(2), and 15 of the Securities Act as described in the amended complaint. Dkt. 60, at 85-91.

For the purposes of this class certification motion, it is not necessary to distinguish the claims against each of the defendants. Therefore, the undersigned will refer to Natera and all other relevant defendants as simply "Defendants."

Natera is a diagnostics company offering genetic testing related to women's health, oncology, and organ health. Dkt. 60, at 5. One of its primary products is Panorama, a "non-invasive prenatal test" ("NIPT") screening for fetal chromosomal abnormalities. *Id.* at 8. Plaintiffs allege that Defendants made false or misleading statements regarding Panorama's accuracy as well as Natera's growth, saying that the company's recent success was driven by sales of Panorama. Dkt. 60, at 9. In reality, Plaintiffs claim Defendants "relied upon deceptive sales and billing practices" to drive Natera's growth, including colluding with a third-party company, My Genome My Life ("MGML"), to inflate Natera's revenue through improper billing and automatically opting-in patients to ordering NIPT. *Id.* at 7, 9-10. Plaintiffs allege that

because of these violations, they "purchased Natera common stock at artificially inflated prices" during the class period[1] and suffered damages. *Id.* at 13.

Plaintiffs moved for class certification. Dkt. 136. Defendants oppose the motion. In the hearing on Plaintiffs' motion, Dkt. 166, the parties' arguments primarily centered on the question of whether Plaintiffs could demonstrate trade-timing or that they purchased stock between the time of Natera's alleged misrepresentations and when the "truth" was revealed to the market regarding the representations. As described below, Defendants argue that Plaintiffs' failure to demonstrate trade-timing means this Court cannot certify the class for multiple reasons. Globally, Plaintiffs allege that the Defendants' misrepresentations began on February 26, 2020. Dkt. 60. As Plaintiffs see it, a March 9, 2022, report from Hindenburg Research (the "Hindenburg Report") first revealed the truth about Natera's allegedly deceptive practices related to MGML and the opt-out forms. *See id.* at 58. Accordingly, Plaintiffs argue that they can demonstrate trade-timing for any investor who traded Natera stock between February 27, 2020, and March 8, 2022, inclusive. *See* Dkt. 136, at 7.

In contrast, Defendants assert that the information disclosed via the Hindenburg Report was known to the market as early as July 1, 2020, and/or December 14, 2020, when *The Capitol Forum* ("TCF") published its own reports regarding Natera's practices. Dkt. 154, at 7-9. Defendants also argue that the truth about the opt-out forms was known to the market before the Plaintiffs purchased

---

[1] Plaintiffs' proposed class period is between February 27, 2020, and March 8, 2022, inclusive. Dkt. 136, at 7.

stock because the forms were publicly available on Natera's website as early as 2020. Dkt. 154, at 15. Because, Defendants argue, the representative parties did not purchase Natera stock until 2021,[2] they cannot demonstrate trade-timing.[3]

## II.    LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). A district court must "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination" of the certification issues. *Id.* at 837 (citation omitted).

Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2),

---

[2] Lead plaintiff British Airways Pension Trust Limited ("BAPTL") certifies that it first purchased Natera common stock on June 8, 2021. Dkt. 60-1, at 4. It last purchased Natera common stock on February 9, 2022. *Id.* Plaintiff Key West Police & Fire Pension Fund certifies that it first purchased Natera common stock on July 21, 2021. Dkt. 9-2, at 3. It last purchased Natera common stock on April 5, 2022. *Id.*

[3] Framed another way, the parties dispute whether the Hindenburg Report was "corrective." *See* Dkt. 154, at 11-14; 161, at 15-17. At the hearing, the parties agreed that if the report was corrective—if it disclosed *new* information correcting Natera's alleged misrepresentations and omissions—then Plaintiffs have satisfied the trade-timing predicate. Dkt. 166. If instead the report disclosed information previously known to the market through the TCF articles and was thereby *not* corrective, then Plaintiffs have not satisfied the trade-timing predicate. *Id.*

or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). Rule 23(a)'s four threshold requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (noting that Rule 23(a) requires "conditions commonly known as 'numerosity, commonality, typicality, and adequacy of representation'" (citation omitted)).

A plaintiff seeking certification under Rule 23(b)(3), as Plaintiffs do here, must also demonstrate that: (1) common questions predominate over any questions affecting only individual members and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Cruson v. Jackson Nat'l Life Ins.*, 954 F.3d 240, 252 (5th Cir. 2020). "Where the plaintiff seeks to certify a class under Rule 23(b)(3), the Rules demand a close look at the case before it is accepted as a class action." *Cruson*, 954 F.3d at 253 (citation omitted). Ultimately, "[t]he decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).

## III.    DISCUSSION

Plaintiffs have moved to certify a class of "[a]ll persons and entities who purchased or otherwise acquired Natera common stock between February 27, 2020, and March 8, 2022, inclusive, and were damaged thereby." Dkt. 136, at 7. Plaintiffs argue that class certification is warranted because they have satisfied the requirements of Rule 23. *See id.* Defendants oppose class certification, primarily arguing that Plaintiffs cannot demonstrate reliance on a class-wide basis as required for their Exchange Act claims under *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (*Halliburton II*). Dkt. 154, at 6-7. Defendants also argue Plaintiffs lack standing to pursue their Securities Act claims. *Id.* at 7, 24-25.

### A.    Rule 23(a)

As stated above, the threshold requirements set forth in Rule 23(a) are "numerosity, commonality, typicality, and adequacy of representation." *Flecha*, 946 F.3d at 766. The undersigned will address each of these conditions below.

#### 1.    *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs argue that this condition is met because Natera common stock traded on the Nasdaq and there was "an average of 78.25 million shares of Natera common stock outstanding, with an average weekly trading volume of 4.48 million shares." Dkt. 136, at 14. Defendants do not contest that numerosity is satisfied. *See* Dkt. 154.

Given Natera's outstanding shares and average trading volume on the Nasdaq during the class period, the undersigned finds that numerosity is met. *See Mullen v.*

*Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (holding that a class of 100 to 150 members generally satisfies numerosity); *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445 (W.D. Tex. 2019) (finding numerosity met where more than 50 million shares were outstanding, with an average weekly trading volume on the Nasdaq of roughly 2.7 million shares); *Prause v. TechnipFMC, PLC*, No. 4:17-CV-2368, 2020 WL 3549686, at *2 (S.D. Tex. Mar. 9, 2020) (stating that numerosity "is generally assumed to have been met in a class action suit involving nationally traded securities").

2.    *Commonality*

Rule 23(a) next requires that Plaintiffs establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is "met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997) (citation removed); *see also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) ("The threshold of 'commonality' is not high.").

Plaintiffs argue that commonality is satisfied here because numerous common questions exist, including, for example, "whether the Defendants omitted or misrepresented facts," "whether those facts were material," and "whether Natera's common stock price was artificially inflated." Dkt. 136, at 15. Defendants do not contest that commonality is met. *See* Dkt. 154.

The undersigned finds that Plaintiffs' proffered questions will affect all or a significant number of the putative class members. *See Lightbourn*, 118 F.3d at 426. Therefore, commonality is met.

### 3. *Typicality*

Under Rule 23(a)(3), Plaintiffs must also show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent" and is "not [a] demanding" test. *Lightbourn*, 118 F.3d at 426; *Gomez*, 200 F.R.D. at 582 ("[C]lass representatives must possess the same interest and suffer the same injury as the class members.").

Here, Plaintiffs argue that typicality is met because plaintiffs "purchased or acquired Natera common stock during the class period at prices artificially inflated by Defendants' misconduct and suffered damages when the relevant, previously concealed truth was disclosed to the market and the price of Natera common stock declined." Dkt. 136, at 15. In a footnote, Defendants argue that "[s]ince neither Lead Plaintiff bought stock before the 'truth' was revealed," typicality is not met. Dkt. 154, at 14 n.7.

While Defendants fail to offer substantive argument on the point, the undersigned takes them to mean that if the Hindenburg Report was not corrective, a representative party who purchased stock after the TCF articles could be subject to a "truth-on-the-market" defense that did not apply to class members who purchased

stock before the TCF articles allegedly revealed the "truth." Therefore, that party may not be typical of the class.[4]

The typicality requirement exists "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As Defendants admit, class certification is inappropriate where a putative class representative is "subject to a unique defense" that threatens to become the focus of the litigation. *See* Dkt. 154, at 14; *Hanon*, 976 F.2d at 508; *In re BP p.l.c. Sec. Litig.*, No. 4:10-md-2185, 2013 WL 6388408, at *10 (S.D. Tex. Dec. 6, 2013) (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006)). If a representative party in this case did, as Defendants argue, purchase stock after a partial disclosure, that party's purchases would not necessarily make it unique. *See In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576-77 (N.D. Cal. 2009) (finding typicality satisfied where lead plaintiff purchased stock after partial adverse disclosures and other class members may have purchased stock after partial adverse disclosures). While some members of the putative class may have purchased stock before the TCF disclosures, the proposed class period spans at least 13 months from

---

[4] While the Supreme Court has raised doubts about whether a plaintiff's claims would be typical of the claims of the class if it failed show trade timing, it also concluded that such questions were not properly resolved at the class-certification stage. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481-82 (2013) (finding that truth-on-the-market evidence was "no barrier to finding that common questions predominate" and was properly considered at a later stage). Defendants raised trade timing at the hearing, but it remains unclear whether the TCF report was corrective. Dkts. 154, at 11-16; 161, at 7-8; 166. In the absence of full briefing on the issue, the undersigned declines to resolve this dispute at the class-certification stage and finds that a plaintiff with such a claim would nonetheless be typical of the class. *Amgen*, 568 U.S. at 481-82. Moreover, given that the question of whether the TCF report was corrective—and therefore whether Plaintiffs purchased stock within the relevant period—is a question common to the class, it need not be decided at the class certification stage. *See id.*

the last alleged TCF disclosure in December 2020. *See* Dkts. 136, at 7; 154, at 7-9. Even if the representative parties in this case did not purchase their stocks at the same time as every member of the putative class, their post-disclosure purchase hardly makes them unique, as many members of the putative class will also have purchased their stocks post-disclosure. Therefore, it is unclear that any class representative will be subject to a *unique* defense.

Notably, the weight of authority demonstrates that the purchase of stock after a corrective disclosure—particularly when the effectiveness of that disclosure is contested—does not categorically bar a finding of typicality. In fact, most courts have found that a representative party that purchased stock after a corrective disclosure remained typical of the putative class. *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 501 (S.D. Tex. 2004) ("[P]urchases after partial curative disclosures do not necessarily render a proposed class representative atypical."); *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, No. Civ. A. 3:98-CV-2551-M, 2002 WL 31415951, at *6 (N.D. Tex. Oct. 28, 2002) (holding that a lead plaintiff was not atypical because he purchased stock after "accurate and negative disclosures were public"); *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018) ("The weight of authority is substantially against [defendant's] argument and 'favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.'"); *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710704, at *8 (C.D. Cal. Feb. 14, 2011) ("Courts have ruled that purchases of stock by the class representatives after negative announcements during

the class period or even after the close of the class period do not destroy typicality."
(internal quotation marks omitted)); *Connetics*, 257 F.R.D. at 577 (holding that "the
purchase of stock after a partial disclosure is not a per-se bar to satisfying the
typicality requirement"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 600
(C.D. Cal. 2009) (finding that representative party was typical despite possible truth-
on-the-market defense against it because the corrective disclosures at issue would
"presumably be analyzed at trial as part of classwide defenses"); *cf. In re Scientific-
Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1326-27 (N.D. Ga. 2007) (finding that
named representatives who purchased shares of stock *prior* to the alleged curative
disclosure were nonetheless typical of class members who purchased stock after the
disclosure because "the claims of the named class representatives rel[ied] on the same
allegations of misrepresentations and omissions and share[d] the same legal theory
as those of the class"); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 92-
93 (S.D.N.Y. 2018) (holding that a plaintiff who bought stock both before *and* after a
possible partial disclosure was typical of the class); *In re Tronox, Inc. Sec. Litig.*, 262
F.R.D. 338, 345-46 (S.D.N.Y. 2009) (holding that a representative party's purchase of
shares after partial disclosures did not render it atypical or subject to unique
defenses); *Deitrich v. Bauer*, 192 F.R.D. 199, 125 (S.D.N.Y. 2000) (finding that a lead
plaintiff was not atypical where he received information different from that of the
rest of the class regarding purchased stock); *contra Rocco v. Nam Tai Elecs., Inc.*, 245
F.R.D. 131, 135-36 (S.D.N.Y. 2007) (holding that the lead plaintiff was atypical
because he made "numerous post-class purchases" of stock); *In re Valence Tech. Sec.*

*Litig.*, No. C 95-20459 JW, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996) (holding that lead plaintiffs were atypical because they, unlike other members of the class, purchased stock post-disclosure).

Finally, because the claims of the representative parties and the putative class members "'arise from a similar course of conduct and share the same legal theory,'" potential factual differences among them do not bar class certification. *Ward v. Hellerstedt*, 753 F. App'x 236, 247 (5th Cir. 2018) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). The representative parties' claims arise from the same alleged misrepresentations as the claims of the class, regardless of the existence of third-party corrective disclosures. *See* Dkt. 60, at 8-10. Additionally, the representative parties and the class share the legal theory that the Defendants made materially false and misleading statements regarding Panorama, which led to the artificial inflation of Natera's stock price. *See id.* at 8-11. The undersigned therefore concludes that typicality is met.

### 4.    *Adequacy of representation*

Finally, Rule 23(a)(4) demands that Plaintiffs demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The rule "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek ISD*, 690 F.2d 470, 484 (5th Cir. 1982).

Defendants do not contest Plaintiffs' counsel's "zeal and competence,"[5] and as such, the undersigned will only address Plaintiffs' ability to serve as class representatives for the proposed class. Plaintiffs state that none has any conflicts with the proposed class members, and their counsel has confirmed that they have "demonstrated their willingness and ability to serve" as class representatives, have engaged appropriately in the litigation so far, and "will continue to vigorously litigate this case." Dkts. 60-1, at 2; 136-2, at 2.

Again, in a footnote, Defendants argue that "since neither [l]ead [p]laintiff bought stock before the 'truth' was revealed," Plaintiffs have not established that the proposed class representatives are adequate. Dkt. 154, at 14 n.7. As with typicality, a plaintiff who did not trade between the time the misrepresentation was made and the time the truth was revealed may not have relied on the misrepresentation and therefore may not "fairly and adequately protect the interests" of those who did trade within that window. *Amgen*, 568 U.S. at 473-74. Initially, even if Plaintiffs purchased stock after the market became aware of the TCF disclosures, it is not clear that doing so would limit Plaintiffs' ability to fairly and adequately protect the class's interests. Plaintiffs have demonstrated their willingness to serve and have served appropriately thus far. *See* Dkts. 136-4; 136-5. Additionally, Defendants do not

---

[5] Because Defendants do not oppose Plaintiffs' counsel's request to be appointed as class counsel, and a review of firm resumes provided by proposed class counsel demonstrates that each of the firms has experience in representing plaintiffs in collective and class actions, has knowledge of the applicable law, and has spent considerable time investigating the claims in this lawsuit, the undersigned will recommend appointing Kessler, Topaz, Meltzer & Check, LLP and Bernstein, Litowitz, Berger & Grossmann LLP as class counsel and Nix Patterson, LLP as liaison class counsel. *See* Fed. R. Civ. P. 23(c)(1)(B), (g); *see* Dkts. 136-2; 136-6; 136-7; 136-8.

explain why the class representatives' interests conflict with the interests of the class in light of the timing of their purchases. Dkt. 154, at 14 n.7.

Reading between the lines, Defendants' concern could be that the class representatives would be preoccupied with the TCF-disclosure issue to the detriment of class members who purchased stock before any allegedly corrective disclosure. *See Menaldi*, 328 F.R.D. at 92 (raising concerns that a lead plaintiff who purchased stock after a disclosure by the *Wall Street Journal* "would be preoccupied with the partial-disclosure issue to the detriment of class members who bought their stock before any corrective disclosure" (citing *Amgen*, 568 U.S. at 472-73)). As in *Menaldi*, and as explained in more detail below,[6] the TCF disclosure is debatably partial. Because the TCF disclosure may not have disclosed all the information contained in the Hindenburg Report—and therefore may not have given a full picture of the alleged fraud by Natera—the undersigned is unconvinced that the timing of the class representatives' purchases here render them inadequate. *See id.*; *see also Tronox*, 262 F.R.D. at 345.

The undersigned finds that Plaintiffs have satisfied the adequacy requirement. The undersigned thus recommends that Plaintiffs British Airways Pension Trustees Limited and Key West Police & Fire Pension Fund be appointed class representatives. The undersigned further recommends that Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossmann LLP be appointed as class counsel and that Nix Patterson, LLP be appointed as liaison class counsel.

---

[6] *See infra* Part III.C.

*    *    *

The undersigned finds that Plaintiffs have satisfied Rule 23(a)'s four conditions for class certification.

### B.    Rule 23(b)(3)

Plaintiffs moved to certify their class under Rule 23(b)(3). Dkt. 40, at 15. To certify a class under this section, the court must determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) identifies four factors that courts should consider in evaluating whether a class should be certified under this section: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). The aim of this inquiry is to identify cases where certification "would achieve economies of time, effort and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted).

### 1.    *Predominance*

Regarding their Securities Act claims, Plaintiffs argue that common legal and factual issues predominate the claims of the proposed class members because they

"'need only show a material misstatement or omission'" in the offering documents. Dkt. 136, at 17-18. They contend that the common questions of (1) "whether there was an actionable misrepresentation or omission in the [o]ffering [d]ocuments" and (2) whether the misrepresentation or omission was material are "common to class members and susceptible to common evidence." *Id.* at 18. Defendants do not contest predominance with respect to the Securities Act claims. The undersigned agrees with Plaintiffs that common questions predominate the Securities Act claims.

As for the Exchange Act claims, Plaintiffs argue that predominance is met for the Rule 10b-5 claim because the falsity, materiality, scienter, and loss-causation elements all raise common questions of law and fact. Dkt. 136, at 18. Additionally, "[r]eliance is an element of a Rule 10b-5 cause of action," and it "provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). Plaintiffs add that reliance, too, is a common question susceptible to class-wide proof in this case since they can invoke the fraud-on-the-market presumption of reliance from *Basic*. Like their arguments regarding typicality and adequacy, Defendants argue that the *Basic* presumption does not apply because "plaintiffs first must demonstrate that they purchased stock *before* the truth was revealed to the market." Dkt. 154, at 11 (citing *Halliburton II*, 573 U.S. at 279-80).

"'The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business ....

Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements[.]'" *Basic*, 485 U.S. at 241-42 (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160-61 (3d Cir. 1986)). The "'causal connection'" in such a case is "'no less significant'" than in a case of direct reliance. *Id.* (quoting *Peil*, 806 F.2d at 1161). Noting concerns that requiring proof of individualized reliance would thwart any attempt to try securities-related cases as class actions, the Supreme Court held in *Basic* that securities plaintiffs could invoke a presumption of reliance supported by the fraud-on-the-market theory.[7]

To demonstrate that the *Basic* presumption applies, Plaintiffs first must show "(1) that the alleged misrepresentations were publicly known, (2) that they were material,[8] (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 268. However, Defendants have an opportunity to rebut Plaintiffs' showing. "[A]ny showing" by the defendant "that severs the link between the alleged misrepresentation and either price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id.* at 269 (internal quotation marks omitted). For example, upon a showing that the alleged misrepresentation did not affect the market price, the presumption of reliance would be rebutted. *Id.*

---

[7] The Supreme Court reaffirmed *Basic* in *Halliburton II*.

[8] Under *Amgen*, while the party seeking class certification must prove materiality to prevail on the merits, "such proof is not a prerequisite to class certification." 568 U.S. at 459.

One way a defendant might try to defeat application of the *Basic* presumption is to present a "truth-on-the-market" defense. *See Basic*, 485 U.S. at 248-49 (treating truth-on-the-market evidence as rebuttal evidence). If a defendant demonstrates that "'news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements,'" any alleged misrepresentation would no longer be (2) material. *Amgen*, 568 U.S. at 481-82 (quoting *Basic*, 485 U.S. at 248-49); *see Halliburton II*, 573 U.S. at 268 (listing the elements required to apply the *Basic* presumption).

The Supreme Court has held that truth-on-the-market evidence—used to show absence of materiality—need not be considered at the class-certification stage. For example, in *Amgen*, the Court affirmed that the district court did not err by disregarding at the class-certification stage Amgen's truth-on-the-market evidence where the truth about Amgen's drug safety issues—misrepresentations concerning which plaintiffs claimed affected the stock price—was allegedly publicized. *Id.* at 482; *see Conn. Retirement Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011). Instead, the Court held that such evidence was "no barrier to finding that common questions predominate" and was properly considered at trial or summary judgment—not at the class-certification stage. *Amgen*, 568 U.S. at 481-82. Put differently, "just as a plaintiff class's inability to prove materiality creates no risk that individual questions will predominate, so even a definitive rebuttal on the issue of materiality would not undermine the predominance of questions common to the class." *Id.* at 481.

In this case, Natera characterizes its truth-on-the-market defense not as a defense to materiality but rather as a failure to demonstrate trade-timing.[9] Dkt. 154, at 11; *Amgen*, 568 U.S. at 459; *see Halliburton II*, 573 U.S. at 268. Arguing that "plaintiffs first must demonstrate that they purchased stock *before* the truth was revealed to the market," Defendants ask this Court to find that Plaintiffs fail to demonstrate reliance, and therefore predominance. Dkt. 154, at 11. In particular, Defendants argue that Plaintiffs purchased Natera stock after the disclosure of Natera's allegedly deceptive practices by TCF. Dkt. 154, at 7-9. If that were the case, and if there were no other corrective disclosures, then the market learned the "truth" and the effect of Natera's alleged misrepresentations would have dissipated. *See id.*

But a rose by any other name would smell as sweet, and a truth-on-the-market defense by any other name goes to materiality. As such, whether the TCF reports exposed the markets to the "truth," or the Hindenburg Report was corrective, is a matter for resolution at a later date after full briefing on the issue. *See Amgen*, 568 U.S. at 482; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 260-61 (N.D. Tex. 2015) (finding that class certification is not the proper procedural stage for the Court to determine whether the disclosures were corrective and that a "veiled attempt" to assert a truth-on-the-market defense was not properly before the court at the class certification stage). Indeed, the Supreme Court also held in *Amgen* that trade-timing "relates primarily to the Rule 23(a)(3) and (a)(4) inquiries into typicality and adequacy of representation, not to the Rule 23(b)(3) predominance inquiry." 568

---

[9] Defendants do not dispute that the misrepresentations were publicly known or that the stock was traded in an efficient market. Dkts. 154, 166; *see Halliburton II*, 573 U.S. at 268.

U.S. at 472. Here, "the pivotal inquiry is whether proof of materiality is needed to ensure that the *questions* of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Id.* at 467 (quoting Fed. R. Civ. P. 23(b)(3)) (emphasis in original). The undersigned finds that common questions will predominate here. Namely, the factfinder will need to determine whether the TCF report was publicly known, whether the TCF and Hindenburg reports were corrective, and whether Defendants' alleged misrepresentations were material as to the class as a whole. The same is true of the opt-out forms: common questions such as whether the opt-out forms were known to the market will need to be answered as to the class.

Defendants argue that they can rebut the *Basic* presumption because they can show it is more likely than not that there was no front-end or back-end price impact. Dkt. 154, at 16-22. As previously stated, a defendant may rebut the *Basic* presumption by "'in fact'" "'sever[ing] the link' between a misrepresentation and the price paid by the plaintiff." *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 125-26 (2021). On this point, the Defendant bears the burden of persuasion by a preponderance of the evidence, and "a defendant's mere production of *some* evidence relevant to price impact" will not defeat the presumption. *Id.* at 126 (emphasis in original). Under *Goldman*, the district court's task is to "assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." *Id.* at 127.

In support of their argument that there was no price impact, Defendants offer the following: first, as "a matter of common sense," the challenged statements did not impact Natera's stock price on the front end because they were "not new"—in that Natera had been making similar omissions for a time before the putative class period. Dkt. 154, at 17-18. Defendants add that the statements did not impact the stock price because they were "not made alone"—that is, the challenged omissions were made at the same time Natera announced positive news regarding the company. *Id.* Plaintiffs respond that Defendants fail to demonstrate a lack of price impact, pointing to their own evidence that there were statistically significant price increases associated with Defendants' alleged misstatements. Dkts. 161, at 9; 161-2, at 27-33. As for Defendants' argument that the misstatements did not cause price increases because they were "not new," Plaintiffs point out that "on each of the dates with front-end price impact, Natera reported *continuing* revenue growth as a result of *growing* Panorama demand, ... which helped drive the price increases." Dkts. 161, at 10 (emphasis in original); 161-2, at 28-30; *see* Dkt. 60, at 53-56 (describing reporting).

The undersigned is unconvinced that it is more likely than not no front-end price impact occurred. The undersigned agrees with Plaintiffs that Natera's reports of continuing revenue growth and growing Panorama demand likely, as a "matter of common sense," impacted Natera stock price. *See* Dkt. 161, at 10. Confronted with limited evidence other than conflicting expert testimony on whether front-end price impact occurred, the undersigned concludes that on balance, Defendants have not carried their burden to rebut the *Basic* presumption of front-end price impact.

Since Defendants fail to show lack of front-end price impact, they fail to rebut the *Basic* presumption. However, the undersigned addresses the arguments with respect to back-end price impact as well.

With respect to back-end price impact, Defendants contend that Natera's stock did not react when the TCF reports first revealed the allegedly corrective information. Dkt. 154, at 18-19. They add that Natera analysts viewed the Hindenburg Report disclosures as merely confirmatory and that the "most likely explanation for the stock price drop that followed release of the Hindenburg Report was fear by the market that Natera was under attack by an activist short seller[.]" *Id.* at 19-20. Defendants conclude by arguing that since the alleged corrective disclosure by the Hindenburg Report was more generic than the alleged misstatements from Natera, there is no price impact. *Id.* at 20-22.

Plaintiffs do not address Defendants' first and second arguments on this point but respond by pointing out that the statements made in the Hindenburg Report were not significantly more generic than those they allegedly corrected. Dkt. 161, at 11. The undersigned agrees with Plaintiffs that the Hindenburg Report was specific enough to address Natera's alleged misstatements. For example, the assertion that "Natera's revenue growth has been fueled by deceptive sales and billing practices aimed at doctors, insurance companies[,] and expectant mothers" is not more generic than Natera's statements that its increase in revenues were driven by sales of the test subject to those deceptive billing practices. Dkt. 155-10, at 2; *see* Dkt. 60, at 53-56 (describing reporting).

Because the *Basic* presumption applies and Defendants have failed to rebut it, predominance is met.

### 2. *Superiority*

To establish superiority, the plaintiff must demonstrate that class certification is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 sets forth several "matters pertinent" to a finding of superiority, including: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Plaintiffs argue that the investors' small individual damages make individual litigation of the claims in this suit prohibitively expensive; there are no other pending individual actions concerning the claims in this case; concentrating the litigation in this forum is desirable, especially considering the geographic dispersal of investors and the fact that Natera is headquartered in Austin; and that there are no likely management difficulties. Dkt. 136, at 28; *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting reference omitted). Defendants do not put forward any argument in response, and the

undersigned concludes that Plaintiffs have established that class certification is superior to other available methods of adjudication here.

*    *    *

The undersigned finds that Plaintiffs have satisfied Rule 23(a)'s four conditions for class certification, as well as Rule 23(b)(3)'s requirements that common questions predominate over individualized ones and that a class action is the superior method of resolving the claims at issue here. The undersigned thus recommends that Plaintiffs' motion for class certification be granted.

### C.    Securities Act Claims

With respect to the Securities Act claims, Defendants assert that Plaintiffs cannot show "(i) a direct purchase in the July 2021 [Secondary Public Offering, or 'SPO'] (as required to establish standing for their Section 12(a)(2) claim), (ii) a purchase traceable to the July 2021 SPO (as required to establish standing for their Section 11 claim), or (iii) that they purchased shares before the allegedly omitted information was disclosed, as is necessary to establish standing to proceed under any claim based on alleged omissions." Dkt. 154, at 24.

Plaintiffs respond that they have adequately pleaded and put forward evidence that Key West purchased Natera shares on the day of the July 21 SPO. Dkts. 60, at 76; 9-2, at 3. This showing is sufficient to demonstrate standing under both Section 11 and 12(a)(2). *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498 (5th Cir. 2005) ("Section 11 *is* available for anyone who purchased directly in the offering and any aftermarket purchasers who can demonstrate that their shares are traceable to the registration

24

statement in question[.]"); 15 U.S.C.A. § 77l(a) (creating a cause of action for purchasers); *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975) ("Thus § 11(a) of the 1933 Act confines the cause of action it grants to 'any person acquiring such security' while the remedy granted by § 12 of that Act is limited to the 'person purchasing such security.'").

To allege Article III standing in a securities class action, a plaintiff "must allege that when the defendant's fraud was revealed, the plaintiff's stock price declined." *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*, No. 23-10696, 2024 WL 1674125, at *3 (5th Cir. Apr. 18, 2024) (citing *Martone v. Robb*, 902 F.3d 519, 524 n.11 (5th Cir. 2018)). "[I]f a plaintiff purchased a defendant's stock after the fraud was revealed, the plaintiff's injury in fact—the economic loss associated with a decline in stock price—is not fairly traceable to the defendant's fraud." *Id.* (citing *Amgen*, 568 U.S. at 472). But the Fifth Circuit has held that a plaintiff who purchases stock after a mere *partial* disclosure still has standing. In *Oklahoma Firefighters*, the Court held that a plaintiff who purchased stock after the defendant had "tempered" some of its misleading statements could still sue based on other claimed frauds that were not fully disclosed. *Id.* at *3-4. While "[a]s a theoretical matter" the Court agreed that "if a plaintiff purchased stock after the fraud was fully disclosed, the plaintiff's injury in fact would not be fairly traceable to the alleged misstatements," because in the case at bar no full disclosure occurred, the district court improperly dismissed the plaintiff's claims. *Id.*

25

As in *Oklahoma Firefighters*, the TCF disclosure in this case is likely partial. The TCF articles are not only third-party disclosures (unlike those in *Oklahoma Firefighters*) but also debatably accessible. *See, e.g.*, Dkt. 161-2, at 42, 43 (stating that TCF "is not an easily accessible source of information" and estimating that a TCF subscription costs $24,000 annually). Additionally, as in *Oklahoma Firefighters*, the TCF disclosures may not adequately address all of the claimed fraud. Plaintiffs argue that the Hindenburg report disclosed new information. *See, e.g.*, Dkt. 161, at 16. For example, they point to one analyst's email to Natera officials pointing out that Hindenburg's reporting on MGML is "new news." Dkt. 161-5, at 3.

Given that Plaintiffs have demonstrated that the TCF disclosures may not be "full" as that term is used in *Oklahoma Firefighters*, and given the Supreme Court's guidance that issues of trade timing are more properly "a matter for trial," the undersigned finds that Plaintiffs do not lack standing on the grounds that they fail to show that they purchased stock before any curative disclosures. *Basic*, 485 U.S. at 249 n.29; *see also Amgen*, 568 U.S. at 482. Therefore, Plaintiffs' motion for class certification should be granted.

## D.    Notice

Having found that certification of Plaintiffs' proposed class is warranted, the undersigned will address the proper means of providing notice of this lawsuit to proposed class members. Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances," which may be achieved through "United States mail, electronic means, or other appropriate means." Fed. R.

Civ. P. 23(c)(2)(B). Here, Plaintiffs request that notice be provided to all potential class members who can be identified through reasonable effort through first-class U.S. mail. Dkt. 136-2, at 5. Plaintiffs also propose publishing a "summary notice in *The Wall Street Journal* and over *PR Newswire*, and establish a case website where the class notice and other relevant documents, including the class certification order and operative complaint, will be made available." *Id.* Defendants do not object to Plaintiffs' proposal. *See* Dkt. 154.

The undersigned finds that notice by first-class mail is sufficient to satisfy Rule 23(c)(2)(B). Notice via first-class mail is sufficient to provide notice to proposed class members under the plain language of Rule 23(c)(2)(B). Fed. R. Civ. P. 23(c)(2)(B) ("Notice may be by one or more of the following: United States mail[.]"); *see also Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute ... that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)). However, since Plaintiffs provide no evidence that the potential class members may not be identifiable or reachable by first-class mail, the undersigned finds that notice by publication would be superfluous here. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) ("[T]he type of notice to which a member of a class is entitled depends upon the information available to the parties about that person."); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 296 (W.D. Tex. 2007) (finding

notice by publication adequate where case involved "potential class members who could not be identified").

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Plaintiffs' motion to certify class, Dkt. 136, and certify a class defined as "[a]ll persons and entities who purchased or otherwise acquired Natera common stock between February 27, 2020, and March 8, 2022, inclusive, and were damaged thereby." Dkt. 136, at 7. The undersigned further recommends that Plaintiffs British Airways Pension Trustees Limited and Key West Police & Fire Pension Fund be appointed class representatives, that Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossman LLP be appointed as class counsel, and that Nix Patterson, LLP be appointed as liaison class counsel. Finally, the undersigned recommends that Plaintiffs be ordered to provide notice to potential class members through first-class U.S. mail.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and,

28

except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED January 28, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN HARVEY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | § § § § | No. 1:22-CV-398-DAE |
| Plaintiffs, | § § | |
| v. | § § | |
| NATERA, INC., STEVE CHAPMAN, MICHAEL BROPHY, MATTHEW RABINOWITZ, and RAMESH HARIHARAN, | § § § § § | |
| Defendants. | § § | |

_____

ORDER: (1) ADOPTING REPORT AND RECOMMENDATION; AND
(2) GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS

Before the Court is a Report and Recommendation (the "Report") (Dkt. # 170) submitted by United States Magistrate Judge Dustin Howell.  The Court finds this matter suitable for disposition without a hearing.  After reviewing the Report, the Court **ADOPTS** Judge Howell's recommendation and **GRANTS** Plaintiffs' John Harvey Schneider, Key West Police & Fire Pension Fund ("Key West"), University of Puerto Rico Retirement System, and British Airways Pension Trustees Limited's ("BAPTL") (collectively, "Plaintiffs") Motion to Certify Class (Dkt. # 136).

BACKGROUND

Although the Court and parties are familiar with the facts, the Court
will recite the background facts of this matter as stated by Judge Howell in his
Report.[1]  Plaintiffs initiated this putative class action based on a series of alleged
securities violations by Defendant Natera, Inc. ("Natera") and various other
defendants.  First, Plaintiffs allege violations of Section 10(b) of the Securities
Exchange Act (the "Exchange Act") and SEC Rule 10b-5 against Defendants
Natera, Steve Chapman, Michael Brophy, Matthew Rabinowitz, and Paul Billings.
(Dkt. # 60 at 69–71.)

The individuals subject to Exchange Act claims served as Natera
executives throughout the class period.  (Dkt. # 60 at 14–15.)  Plaintiffs also bring
claims against Chapman, Brophy, Rabinowitz, and Billings for alleged violations
of Section 20(a) of the Exchange Act.  (Id. at 71–72.)  Additionally, Plaintiffs sue
Chapman, Brophy, and Rabinowitz for alleged violations of 20A of the Exchange
Act.  (Id. at 72–75.)  Finally, Plaintiffs allege that Natera, Chapman, Brophy,
Rabinowitz, nine Natera directors, and various other institutional defendants
violated Sections 11, 12(a)(2), and 15 of the Securities Act as described in the

---

[1] To the extent any objections are made to Judge Howell's recitation of the facts,
the Court will note it in the objections discussed below.

amended complaint.  (Id. at 85–91.)  Unless otherwise noted, Natera and all other

relevant defendants will be referred to in this Order as simply "Defendants."

Natera is a diagnostics company offering genetic testing related to

women's health, oncology, and organ health.  (Dkt. # 60 at 5.)  One of its primary

products is Panorama, a "non-invasive prenatal test" ("NIPT") screening for fetal

chromosomal abnormalities.  (Id. at 8.)  Plaintiffs allege that Defendants made

false or misleading statements regarding Panorama's accuracy as well as Natera's

growth, saying that the company's recent success was driven by sales of Panorama.

(Id. at 9.)  In reality, Plaintiffs claim Defendants "relied upon deceptive sales and

billing practices" to drive Natera's growth, including colluding with a third-party

company, My Genome My Life ("MGML"), to inflate Natera's revenue through

improper billing and automatically opting-in patients to ordering NIPT.  (Id. at 7,

9–10.)  Plaintiffs allege that because of these violations, they "purchased Natera

common stock at artificially inflated prices" during the class period[2] and suffered

damages.  (Id. at 13.)

On June 4, 2024, Plaintiffs moved for class certification.  (Dkt.

# 136.)  On August 16, 2024, Defendants filed a response in opposition to the

motion.  (Dkt. # 154.)  On October 4, 2024, Plaintiffs filed their reply.  (Dkt.

---

[2] Plaintiffs' proposed class period is between February 27, 2020, and March 8, 2022, inclusive.  (Dkt. # 136 at 7.)

# 161.)  The motion was referred to Judge Howell, and on January 28, 2025, Judge

Howell made his Report on Plaintiffs' motion.  (Dkt. # 170.)  On February 21,

2025, Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC,

Cowen and Company, LLC, SVB Leerink LLC, Robert W. Baird & Co., BTIG,

LLC, and Craig-Hallum Capital Group, LLC (collectively, the "Underwriter

Defendants") filed their objections.  (Dkt. # 172.)  The same day, the Natera

Defendants filed a joinder in those objections.  (Dkt. # 173.)  On March 7, 2025,

Plaintiffs filed a response to the objections.  (Dkt. # 174.)  On March 19, 2025, the

Court allowed the Underwriter Defendants to file a reply in support of their

objections.  (Dkt. # 176.)  The Court will address the objections to the Report

below.

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate

Judge's conclusions to which a party has specifically objected.  See 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made.").  The objections must specifically identify those findings or

recommendations that the party wishes to have the district court consider.

Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider

"[f]rivolous, conclusory, or general objections."  Battle v. U.S. Parole Comm'n,

834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

## DISCUSSION

Plaintiffs move to certify a class of "[a]ll persons and entities who purchased or otherwise acquired Natera common stock between February 27, 2020, and March 8, 2022, inclusive, and were damaged thereby."  (Dkt. # 136 at 7.)  In his Report, Judge Howell made the following findings: (1) Plaintiffs met the threshold requirements for class representation pursuant to Rule 23(a): numerosity, commonality, typicality, and adequacy of representation; (2) Plaintiffs BAPTL and Key West should be appointed class representatives, and Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossman should be appointed class counsel, and Nix Patterson, LLP should be appointed as liaison class counsel; (3) Plaintiffs have satisfied the Rule 23(b)(3) requirements to certify a class: predominance and superiority; and (4) Plaintiffs do not lack standing on the grounds that they fail to show they purchased stock before any curative

disclosures.  (Dkt. # 170.)  For these reasons, Judge Howell recommended the Court grant the motion to certify the class and that first-class mail be utilized to provide notice to proposed class members.  (Id.)

Underwriter Defendants object to the Report.  (Dkt. # 172.) Specifically, they object on the basis that, as Underwriters, Plaintiffs sue them only for violations of Section 12(a)(2) of the Securities Act, which requires a plaintiff to have purchased shares directly from an Underwriter in the offering at issue.  (Id. at 2.)  The offering at issue, as applied to the Underwriters, concerns Natera's July 2021 secondary public offering ("SPO").  Underwriter Defendants contend that Plaintiffs lack standing because there is no evidence that Plaintiffs purchased shares in the SPO from an Underwriter.  (Id. at 2.)  Therefore, according to the Underwriter Defendants, the typicality element for standing is not met.  (Id.)

Section 12(a)(2) imposes liability on anyone who "offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact." 15 U.S.C. § 77*l*.  Only persons who "directly purchase securities from the defendant in a public offering, rather than on the secondary market," have standing to assert a claim under § 12(a)(2).  See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 578 (1995).

Upon de novo review, the Court finds, as did the Magistrate Judge, that Plaintiffs have adequately pleaded and provided sufficient evidence—at this stage of the litigation—that Key West, a named plaintiff, purchased Natera shares from Underwriter Defendant Morgan Stanley on the July 21 SPO.[3]  (See Dkt. # 9-2; Dkt. # 60 at ¶¶ 251, 300.)  The Court further finds that even if standing must be established at the class certification stage, the Underwriter Defendants have not shown that Plaintiffs must have purchased shares from *each* Underwriter in an offering to have standing in a Section 12(a)(2) claim.  See In re WorldCom, Inc. Secs. Litig., 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003) (determining that standing of the named plaintiffs to bring Section 12(a)(2) claims was "sufficiently pleaded" where it was alleged that plaintiffs purchased "securities in the two Offerings, . . . Underwriter Defendants participated in the solicitation and sale of the notes in the Offerings pursuant to the Registration Statements, [and] that the solicitations were motivated at least in part by the desire of the Underwriter Defendants to serve their own financial interest and the interest of [the Company]" even though the

---

[3] Furthermore, to the extent the Underwriter Defendants object to Plaintiffs' evidence that Key West purchased shares from Morgan Stanley, the record in this case reflects that the Magistrate Judge at the hearing on the motion for class certification inquired into whether Defendants sought discovery from Key West and Defendants responded that "a determination was made that we weren't going to engage in discovery with [Key West]."  (Dkt. # 174-2 at 4.)  After sufficient time for discovery, Underwriter Defendants may re-raise this issue at a later stage of this case.

allegations did not "identify from which defendant" the named plaintiffs purchased); In re Wachovia Equity Secs. Litig., 753 F.Supp.2d 326, 374 (S.D.N.Y.2011) (declining to dismiss Section 12(a)(2) claims even though complaint failed "to identify which Underwriter Defendants sold particular securities to the named Plaintiffs"); but see Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp., 731 F. Supp. 2d 689, 712–13 (S.D. Ohio 2010) (finding at pleading stage allegations that plaintiff purchased shares from a single underwriter defendant not sufficient to sustain claims against other underwriter defendants).

Likewise, the Court overrules the Underwriter Defendants' objection that both BAPTL and Key West must have standing to bring their Section 12(a)(2) claims on the basis that neither has shown standing. Again, the Court has found upon de novo review that Key West has presented some evidence that it purchased Natera shares from Underwriter Defendant Morgan Stanley on the July 21 SPO. To the extent Underwriter Defendants acquire controverting evidence on this issue, they may present it at a later stage of this case. Thus, at this point, standing has been sufficiently shown. Furthermore, there is no requirement that a lead plaintiff, in this case BAPTL, must have standing itself to sue on every available claim. See Hevesi v. Citigroup Inc., 366 F.3d 70, 82 (2d Cir. 2004). Accordingly, based on

the foregoing, the Court will overrule the Underwriter Defendants' objections to Judge Howell's Report.

Furthermore, Judge Howell's findings to which there were no objections have been considered by this Court and found to be neither clearly erroneous nor contrary to law and thus they will also be adopted.

## CONCLUSION

Having reviewed the Magistrate Judge's findings and conclusions and finding no errors, the Court will accept and adopt the Report and Recommendation for the reasons stated therein. Thus, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court (Dkt. # 170) and **GRANTS** Plaintiffs' Motion to Certify Class (Dkt. # 136). A class defined as "[a]ll persons and entities who purchased or otherwise acquired Natera common stock between February 27, 2020, and March 8, 2022, inclusive, and were damaged thereby" is hereby certified. It is **FURTHER ORDERED** that Plaintiffs British Airways Pension Trustees Limited and Key West Police & Fire Pension Fund are appointed class representatives, that Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossman LLP are appointed as class counsel, and that Nix Patterson, LLP is appointed as liaison class counsel. Finally, it is **ORDERED** that Plaintiffs be ordered to provide notice to potential class members through first-class U.S. mail.

Pursuant to the Scheduling Order entered in this case on February 29, 2024, the Court **ORDERS** the parties to file a revised scheduling order substituting exact dates for the deadlines set out in paragraphs 9-18 of this order **within 14 days of the date of this Order**.

IT IS SO ORDERED.

**DATE:** Austin, Texas, March 21, 2025.

_____
David Alan Ezra
Senior United States District Judge